## Case No. 556.

### ARNOLD v. DELCOL.

[Bee, 5.] [1]

District Court, D. South Carolina. 1794.[2]

SHIPPING—PUBLIC REGULATIONS—REGISTRY—FOREIGN FLAG—FOREIGN CLEARANCES—PRIZE.

1. An American vessel does not forfeit her neutral character merely by hoisting a foreign flag in conformity to the regulations of a particular trade.

2. Spanish clearances found on board an American ship are not proofs of double papers, if no other marks of fraud appear.

[3. Cited in The Jane Campbell, Case No. 7,205, to the point that the burden is always on the captain to prove the necessity for the spoliation of property found on a prize, or the separation of the officers or crew from the vessel.]

[In admiralty. Libel by one Arnold against Delcol and others, the owners of the French privateer La Montague, and of the ship In-

---

[1] [Reported by Hon. Thomas Bee, District Judge.]
[2] [Affirmed by the circuit court, (not reported;) and also affirmed by the supreme court in Del Col v. Arnold, 3 Dall. (3 U. S.) 333.]

dustry, for the capture of the American brig Grand Sachem, commanded by Ebenezer Baldwin, and owned by Arnold. Decree for libellant. Affirmed by the circuit court, but not reported; also affirmed by the supreme court in Del Col v. Arnold, 3 Dall. (3 U. S.) 333.]

A short statement of this case [Del Col. v. Arnold] may be seen in 3 Dall. [3 U. S.] 333.

A plea to the jurisdiction of the district court had been over-ruled, and after argument upon the merits, a decree was pronounced in favour of Arnold for the sum of 33,000 dollars and upwards.

Upon appeal from this decision to the circuit court, BEE, District Judge, assigned the following grounds of his opinion in the district court: 1st. Because it appeared in evidence that the Grand Sachem had a regular register and sea-letter, to shew that she was an American vessel, and to entitle her to all the privileges of one. 2d. That the property in Arnold, an American citizen, was fully proved. 3d. That by the 25th article of the treaty with France, the production of sea-letters was sufficient in itself to prevent any just detention of the vessel. 4th. That the witnesses, who maintained that the trade to New-Orleans could only be carried on in Spanish bottoms, speak of a time prior to the period when Arnold's vessel was there, and prior also to the edict of 1793, by which that trade was opened. 5th. That there was much contrariety of evidence as to the legality of trade with New-Orleans, which, though prohibited generally in other than Spanish ships, was sometimes carried on, by express permission, in foreign bottoms. It was proved by one of the witnesses, that two American vessels laden with provisions had arrived at New-Orleans under such permission, notwithstanding which they could not proceed up the river till they had procured Spanish colours. That a compliance with this indispensable requisite was not sufficient to divest the Grand Sachem of her American character and privileges. 6th. That there was no pretence of double papers, or of any fraud or collusion supported by legal proof. That the only Spanish papers were a receipt in that language by the captain, produced to shew that the property on board belonged to Cox and Clark; (but the captain swears he signed it from ignorance of the Spanish language alone, as he knew that the whole belonged to Arnold,) and some Spanish clearances, without which the brig could not have departed from a Spanish port. Clark, too, swears positively that the property was in Arnold, and that he himself was only an agent.

The decree of the district court, founded upon these and other reasons, was confirmed in the circuit court, and that decision was finally supported in the supreme

court. See Dallas's Reports [Del Col v. Arnold, 3 Dall. (3 U. S.) 333 as above cited.

[NOTE. Affirmed by the supreme court. upon other grounds, in Del Col v. Arnold, 3 Dall. (3 U. S.) 333.]